we will move on. We'll wait just a minute while people clear out. Our fourth case for this morning is United States v. Giles. Mr. Ellenson. May it please the court. My name is Gregory Ellenson and I represent defendant appellant Jon Giles in this appeal of his criminal conviction and sentence. On the day he confessed to a bank robbery after being interrogated by two FBI agents Mr. Giles had spent close to a thousand days in almost continuous solitary confinement. That shuddered Tam's correctional center. His confession was involuntary and should have been suppressed. Mr. Giles seeks reversal of that decision. In the alternative he seeks remand for resentencing as the district court failed to address his non-frivolous arguments. The government does not dispute that Mr. Giles has a documented pre-existing history of mental illness and brain trauma. Nor does it dispute that he suffers from symptoms that are commonly associated with and exacerbated by solitary confinement. Those symptoms include cognitive impairments, paranoia, hallucinations, repetitive behaviors, and extreme discomfort in the presence of others. Those symptoms were corroborated by a government psychologist who examined Mr. Giles in the pre-trial competency exam. That psychologist concluded that Mr. Giles has extensive psychological deficits including in his executive functioning. So here's the problem Mr. Ellenson. I mean I think this is appalling and I think people are increasingly realizing how destructive the conditions that Mr. Giles suffered can be. But the district court nonetheless made a finding of the Mr. Giles retained enough capability to give a voluntary confession and that's a fact finding. There are some circumstances that support the district court's decision so we need to know what is it here that's so powerful that it should cause us to find the district court's decision on the underlying facts at least clearly erroneous or even if we're on a more generous standard of review. So it's not that anybody thinks this is a good thing but the ultimate question isn't are you a hundred percent healthy? It's are you so impaired that you can't convict? Your honor this court has been clear that voluntariness is a matter is ultimately a matter of law and that was the holding in the United States against DF and it was reinforced just last year in Higgins Vaught. So the question is the inferences you draw from the undisputed facts in the record. So for example we don't dispute that Mr. Giles consulted whether tried to consult with a fellow inmate. Are you when you say voluntariness are you asking about voluntariness in general or the voluntariness of the Miranda waiver? So we're saying both your honor we're saying both. Except the former is a jury question and Colorado against Connolly says it's a fact question. Well this court has said that the inquiry. We can't overrule the Supreme Court. If Colorado against Connolly says it's a fact question for the jury then it's a fact question for the jury. Well your honor in this court's precedent whether it's for the purposes of the due process. You're controlling and under their precedent voluntariness is a question it's a fact question for the jury. The voluntariness of a Miranda waiver is a legal question for the court. That's why I'm asking you if you're trying to distinguish them or merge them because if you want to merge them you've got trouble under the Supreme Court's cases and if you want to distinguish them you don't have that trouble. Well at least we're happy to distinguish them here and the question whether the confession was ultimately voluntary under the due process clause is a question of law and that's what this court's. So you want us to disregard Colorado against Connolly. It's not how you make your best argument. I'm sorry we can focus on the voluntariness of the Miranda waiver. Miranda waiver is what you're talking about. Yeah I think it was just. That's where you need to focus. And that question is a question of law and that question is about whether you draw facts what inferences you draw from the facts of the district court found. And so here we think that those facts while uncontested you draw different inferences than the ones of the district court drew. Knowing what you know about this particular defendant and his particular vulnerabilities and knowing what you know about the more general science that courts have found persuasive in the years that the district court made this decision which was October 2015. And since then you have cases from this court as well as from the Third Circuit and the Fourth Circuit and several justices of the Supreme Court that have taken seriously the more general scientific findings that we've cited. So Mr. Giles though does display his awareness of what's going on around the time of this Miranda waiver. He doesn't want to talk to the agents until he's sure he's going to be safe. He tries to bargain for lenience in exchange for getting some information. He ends the exchange at a certain point suggesting that he again knows what he's doing. So why does that why is that not enough to support the voluntariness of the Miranda waiver. And I'll just say if if he should have had if the Miranda waiver is bad then a whole lot of other things fall apart too. But if the Miranda waiver stands then we have trouble. Well the question about the specific facts or the specific decisions we're not contesting that he it's not as though you this is a person for example who spent most of his life in prison and so he's socialized to prison rules and norms. And so our point is in for example in saying that he wanted to try and consult with his fellow inmate we're not saying that's evidence or we're contesting that that's evidence of a fully rational decision. We are saying that's consistent with somebody who socialized into prison and whose instincts about whether or not to talk to somebody he doesn't know in a context that's unfamiliar to him are amplified by the extensive isolation he's experienced. So we're saying the right conclusion to draw from that is not this is a person who's acting rationally or fully rationally. We're saying you can contextualize that behavior knowing how solitary confinement affected this defendant and affects defendants or people who are in this position more generally. So do you have any evidence other than just how stressful the solitary confinement and are did he behave in a strange way? No your honor there's no evidence that he necessarily behaved well he did not behave in a way that necessarily struck others as bizarre but that doesn't again necessarily mean that his behavior was rational. We know from the literature on solitary confinement that the kinds of cognitive difficulties people experience wouldn't necessarily manifest themselves unless you're in the kind of situation that Mr. Giles was in where he's asked to call upon information to recall information to assimilate information and so it wouldn't necessarily be apparent to a layperson that he was experiencing those cognitive difficulties. The government does note that the agents knew that he was in administrative segregation and so that's a feature particularly under the sort of lack of emergency circumstances that we have here that's a feature that could have triggered them to behave differently. So he's removed from solitary confinement three days after they had done this extraction and maced him and stripped him and so forth and then I guess they put him back in. Correct. Okay. If I could address the sentencing argument your honor. Despite the probation office's recommendation of a 12-year sentence to be served concurrently with the remainder of Mr. Giles' sentence the district court sentenced him to 30 years although it did give him credit for the state time he served. Mr. Giles made three non-frivolous arguments in mitigation that were not so weak as to merit discussion. Emphasizing first the health effects of his time in solitary, second his age upon release, and third other physical and mental health issues and the district court did not address those arguments. That's contrary to this court's instructions as it is said for example in United States against Vidal you have to address mental health disorders and remand is necessary for the for that reason as well. And the district court here unusually did not follow the procedure that we recommended in the Garcia-Segura case right? That's correct. The government suggests that the district court had some it sort of made remarks like is there anything further from the parties or were the parties like anything anything additional to be addressed and the court has been clear that that's not the kind of thing that satisfies Garcia-Segura. So for example in United States against Morris this court addressed blanket queries of a similar type and held that they don't satisfy Garcia-Segura. So we think that those comments from the district court don't pass muster. The several courts have emphasized as we've discussed the deleterious consequences of solitary confinement on a defendant's health and while the district court was surely aware of those jurisprudence requires that it address those consequences during sentencing. On the second issue that Mr. Giles raises age upon release the court is also recognized in several cases including United States against Presley and US against Polk that individuals can age out of violent crime. He was going to be about 57 is that right? That's correct and in that case as Presley and Polk hold a sentence of the length that he got was more was longer than necessary to achieve the deterrent effect that this court requires or that section 3553A suggests that the court or requires the court to consider. And Mr. Giles has a variety of physical and mental health issues that were exacerbated but that pre-exists his solitary confinement. He listed those and addressed those in his sentencing brief and the court those include brain trauma that includes a variety of other conditions, a history of mental illness, and some physical issues that he addressed in his sentencing brief and that the court did not discuss in sentencing Mr. Giles. Okay Are you Mr. Catazone? That's correct your honor, Catazone. Catazone, okay. Morning your honors, may it please the court. The district court properly denied Mr. Giles his motion to suppress in this case. Now an appeal Mr. Giles does not challenge as a matter of fact any of the evidence that the district court relied on in concluding that Mr. Giles's confession was voluntary and not the product of an overborn will. Those facts include as your honor has discussed this morning already that he was behaving normally and without distress that morning. That came from the FBI agent who interviewed him, the correctional guard who saw him, and most importantly Robert Hall, his friend, fellow gang member, and fellow inmate of 17 years who said that neither that day nor any other time had he had any difficulty communicating with Mr. Giles. In addition, as the district court found Mr. Giles exercised free will repeatedly, initially refusing to meet with the agents and then changing his mind after obtaining consent from Mr. Hall, the district court found that the agents ensured that Mr. Giles was able to read the Miranda form that he understood and was questioned about the bank robbery. He initially denied involvement before then changing tactics and admitting involvement and specifically recalling certain details of the robbery. Of course he, I mean he has this history of mental illness and major head trauma and the conditions of solitary confinement under which he was being held would be enough to distort a very strong person, much less somebody vulnerable because of mental illness. What was the rush? You know, why couldn't the agents have put him, you know, in some more humane circumstance for a week or two and then asked him about the bank robbery? It was an old robbery. It was an old event. Contrary to what the agents did not in fact know that Mr. Giles had been in solitary confinement for the time that he was there, did not understand that he would be having any of the symptoms or problems that his expert later said he did. In fact, both agents testified that Mr., consistent with Mr. Giles' friend Mr. Hall and with Officer Lopeman, that Mr. Giles appeared normal. They did not notice any signs of mental distress. So from the agent's perspective, there was no reason to delay the interview when they arrived at the jail, learned that morning that Mr. Giles had been in segregation, but did not have any other details beyond that. And in those circumstances, as the Supreme Court has held, because coercion is required in order to find that a confession is involuntary, nothing that the agents did on August 30th, 2013 amounted to anything that would qualify the agents that would qualify under Supreme Court standards or this Court's standards. I'd like to talk to you a little bit about the sentence because I am concerned that the district court took too many shortcuts here in looking at Mr. Giles' mitigation arguments. So to, and the judges, not that you have to comply with the Garcia-Segura, but to highlight mitigation arguments, 3553A points, however you want to describe them, and say, you know, have I covered all of the things that you're trying to raise? He actually did not cover important points that had at least as much substance, if not more, than many I see. If it pleases Your Honor, I can address each of the arguments in order and try to address the Court's concerns that you've identified about them as a whole. As to the first one, Mr. Giles argues that the district court did not properly put on the record its consideration of his argument that his time in solitary confinement was a mitigating factor. As the Court is aware, district courts are required to discuss principal, non-frivolous mitigating arguments. I would submit that this argument, that he should receive a lower sentence because he was in solitary confinement, does not qualify under any of those prongs. First... Why is it frivolous? I mean, it seems to me he's been in this brutal environment which has exacerbated his mental health problems. The judge does recommend or say that he would recommend sending Giles to a facility with mental health treatment options after the sentence was imposed, not before. So, certainly not a reason for the sentence. Counsel prompts it. The standard for frivolous is whether anyone present would know why the district court rejected the argument. Right. I don't. Maybe I'm not up to speed. In light of the one or two sentences that Mr. Giles offered, and in light of the district court's prior conclusion that Dr. Silberberg's testimony about his solitary confinement was unsupported and contradicted, anyone who is familiar with the case would see that Mr. Giles is presenting the same arguments from an expert whom the court has previously rejected is a frivolous argument under that standard. But more importantly, the solitary confinement argument is not mitigating. In this case, Mr. Giles conceded at trial that he was placed in solitary confinement for lawful reasons, for serious disciplinary violations while he was in prison. And essentially, then, what he's asking the court to do is to say, give me credit as a lower sentence because while I've been incarcerated, I've committed more wrongful acts. He did not attempt to say that he committed the initial bank robbery as a result of the solitary confinement. He said, I made these choices while I was But it's the condition. I mean, I don't know that it's even so much administrative segregation or solitary confinement. Would you be making the same argument if, while he was in solitary confinement, he had been tortured? No. And I don't dispute that under the right circumstances, conditions of confinement can be mitigation. Right. So, I mean, regrettably, that does happen sometimes, although I certainly hope not in Bureau of Prison Facilities. But that's really more the nature of his argument. It's not saying I was such a good boy. He obviously wasn't. But the conditions, he's saying, were so subhuman, stripped naked, maced, all the rest of it, that he's saying this went beyond simply an assignment to a particular area of the prison. No, I don't. I don't believe that Mr. Giles has ever contended that either the conditions or the reasons why he was placed in segregation were unlawful. In other words, he's agreed he was there for valid reasons. And for that reason, even if in the abstract, in a different case, conditions of confinement, torture or the like, could be mitigation. In the facts here, this is aggravation. He's conceding that he misbehaved and was required to be sent to administrative confinement and then request a lower sentence on the basis that he had committed more wrongful acts while in prison. That's not normally how mitigation works. So it was not a mitigating argument in addition to the other reasons. As to the argument that the district court refused to or failed to address Mr. Giles's argument about aging out, that's simply rebutted by the transcript. True, the district court may not have said verbatim, I have reviewed the case law about aging out and I find it not applicable here. But the court's factual findings and reasons squarely addressed Mr. Giles's argument that he should receive a lower sentence because he would age out. The district court specifically highlighted, for example, that as recently as, this is on page 32 of the sentencing transcript, that as recently as October of 2015, Mr. Giles was engaged in yet a separate criminal offense while he was incarcerated waiting trial on this federal case. And how old was he at the time? He was 38, well in 2015 he was 36, he was 38 at time of trial. At the time of the offense the judge is focusing on? At the time, 29 when he committed the bank robbery in 2009 and then he was tried in 2018, sentenced in 2019. And his wrongful acts and unlawful acts continued even while he was incarcerated in federal custody, which led the district court to say I have no reason whatsoever to believe that if he were not released today he would not continue to commit crimes and threaten other people. No, the question is do you have to keep him in until he's 57 or would 55 do or something? Certainly the data suggests that people above the age of 50 don't commit these kinds of crimes at the same rate as the younger folks. But in this case the district court had more than data, the district court had specific conduct and recent conduct by Mr. Giles and adequate basis to conclude, this is page 33 of the sentencing transcript, what I see is a failure to reform in any way, shape or form based upon his actions up to and including his stay at the MCC, that's where he was staying pending federal trial, and what I see is very little likelihood of rehabilitation. That squarely addresses Mr. Giles' argument that he would age out. As to the medical care argument, which dovetails somewhat with the mental health conditions argument, which dovetails somewhat with Mr. Giles' arguments about solitary confinement, this also is not a principle non-frivolous argument in mitigation. Mr. Giles offered two sentences, two clauses in support of this argument and here they are. He said that courts, quote, may impose below guideline sentences based on the nature of the defendant's health and, quote, the PSR observed that Mr. Giles' mental health concerns are one reason to consider departing downward from the guidelines. That's it in terms of his argument for mitigation based on his mental health conditions. As this court held in Donelli, the statement that the defendant has a mental illness is not in itself an argument. And similarly in Steinfast, the court found that where the defendant simply states that he has a mental illness and does not connect his offense of conviction, does not argue, I deserve mercy in the lower sentence because my mental health issues caused me to commit the crime, that's not an argument that the court even needs to consider. So under Donelli and Steinfast, the mental health argument is also not a principle non-frivolous argument in mitigation. On top of that, the district court did address Mr. Giles' primary mental health argument, which was a request for mental health treatment, and did grant that and order that Mr. Giles receive mental health treatment. But you can't order it. All you can do is recommend to the BOP. That's correct, Your Honor. Place that in the judgment and ask BOP. Who then do it or not, as they wish. And finally, even Mr. Giles does not argue that Garcia-Segura or any of this court's cases require the district court to make this inquiry about whether counsel is satisfied with the explanation. We strongly recommended that only, though, because it keeps these discussions where they belong. It keeps them in the district court. It allows the district court, if it's alerted to something, to make a better record. It takes five minutes if it's done there, instead of lots of time and notices of appeal and briefs and all the rest of it. It's a very salutary practice. It would be more salutary if it worked. There are district judges who do that all the time, and the defendants appeal anyway. Well, and there are district judges who never do it, and the defendants also appeal. Yes, even more frequently. Yes, right. Well, in this case, Your Honor, salutary though it may have been, it was not required. And it was not necessary in the facts here because the district court was not required to give further explanation than it did. And in any case, as the record shows, counsel was repeatedly given the opportunity by the district court to voice objections, concerns, or amplifications for the sentence. Okay. Unless Your Honors have further questions, I would ask that the court affirm both Mr. Giles' conviction and sentence. All right. Thank you very much. Anything further, Mr. Katazan? I'm sorry, Mr. Ellenson. Thank you, Your Honor. I just wanted to address a few points raised by the government. First on the coercion point, this court has never held that there is an absolute standard of coercion. The court has held that coercion is an interaction between the vulnerabilities of the suspect and the conduct of the interrogators. That's what the court held in Dassey. And we submit that under these circumstances where the agents pulled Mr. Giles out of the hole without a transition period, without a mental health examination, interrogated him in chains, when you look at all of that together, we think that interrogation amounts to coercion. Now, the agents, the government does concede, and this is on page 10, note 4 of their brief, that the agents at least knew that Mr. Giles, there came a time when they knew that Mr. Giles was in administrative segregation. And as Your Honor suggested, this was not an emergency case. The government delayed for quite a while in testing the DNA from the latex glove, and it also delayed for quite a while in interviewing Mr. Giles once the DNA test came back. On the sentencing issues, several courts of appeals just in 2017 and 2018 have emphasized the negative psychological consequences of solitary confinement. And so it seems somewhat odd to the defendant for the government to suggest that an argument that extensive time in solitary confinement, including at a facility that has come in for quite a lot of criticism and has since been closed, doesn't amount to a non-frivolous argument for mitigation. Second, the government suggests that the district court addressed Mr. Giles' age upon release argument when it talked about his capacity for rehabilitation. But those are not the same thing. The probability of rehabilitation at the time he was being sentenced is different than the question whether he would be likely to recidivate upon release. And as this court explained in Presley and Polk, violent crime of the type for which Mr. Giles is serving his state conviction is a young man's game. And Mr. Giles would be in his late 50s were he to be released given the sentence the district court gave him. On the mental health issues, and this applies to the other arguments as well, the arguments counsel made below extend from approximately pages A261 to A269 of the appendix we submitted. They're quite detailed. They have a lot of arguments. They cite cases. They cite scholarship. And this court has recognized that even independent of the solitary issue, mental health alone can be a non-frivolous argument for mitigation. And so with that, we would say we would like the court to remand or to reverse Mr. Giles' conviction or in the alternative to remand for resentencing. Thank you very much, Mr. Ellenson. And you took this case by appointment, I believe, and we appreciate your efforts on behalf of your client and for the court. Thanks as well to the government. We'll take the case under advisement.